UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

CARL L. COLLINS, III,

    Defendant.

_____/

Case No. 19-cr-20685

U.S. District Court Judge
Gershwin A. Drain

## **OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR NEW TRIAL (ECF No. 129)**

### I. INTRODUCTION

On March 17, 2021, a grand jury returned a second superseding indictment against Defendant Carl L. Collins, III ("Collins" or "Defendant"), charging him with six counts of willfully making a false tax return in violation of 26 U.S.C. § 7206(1) (Counts One and Nine through Thirteen) and seven counts of willful failure to file return in violation of 26 U.S.C. § 7203 (Counts Two through Eight). *See* ECF No. 53. On December 22, 2021, the Court granted the Government's Motion to Dismiss Count Thirteen. ECF No. 62. A jury trial commenced on October 26, 2022, and the case was submitted to the jury on November 10, 2022. On November 16, 2022, the

1

jury returned a verdict, convicting Collins of five violations of 26 U.S.C. § 7206(1) and acquitting him on the remaining counts. See ECF No. 107.

Presently before the Court is Collins' Motion for New Trial. ECF No. 129. The Government responded, ECF No. 134, and Collins' replied, ECF No. 136. The Court held an evidentiary hearing on the matter on June 1, 2023. For the reasons discussed below, the Court **DENIES** Defendant's Motion for New Trial (ECF No. 129).

## II. BACKGROUND

### A. Factual Background

During the trial, the Government relied heavily on the expert testimony of IRS Revenue Agent Kelly Williams, who is a Certified Public Accountant and a Certified Fraud Examiner. See ECF No. 96, PageID.1529. Agent Williams testified that she calculated Mr. Collins' underreported income using the cash basis accounting method. See id. at PageID.1637. She described her methodology as follows: she "added up the total fees from Mr. Collins' legal practice plus the dividends and distributions that [he had] received" in the target year, subtracted it from disbursements to third parties that year, and then compared that amount to the gross income he reported on his returns that year. Id. at PageID.1545; id. at PageID.1637. She explained that Mr. Collins' beginning and ending balances in his bank accounts

were irrelevant to her calculations because her method is "based on the income [the taxpayer] receive[s] in the current year and the expenses [the taxpayer] [has] in the current year." *Id.* at PageID.1694. Using this method, she determined that Mr. Collins underreported his income as follows:

> Count 1 – 2012 Personal return: $623,945
> Count 9 – Amended 2012 personal return: $578,935
> Count 10 – 2015 Personal return: $860,319
> Count 11 – 2015 Alpha Living, LLC: $351,296
> Count 12 – 2018 Personal return: $297,323

ECF No. 129, PageID.2755.

In contrast, Mr. Collins relied on the expert testimony of Dana Kaufman, who is also a Certified Public Accountant. *See* ECF No. 97, PageID.1707. Mr. Kaufman also testified that Mr. Collins and his business entities (MedCity Rehab Services, LLC and Alpha Living, LLC ("Alpha Living")) are cash basis taxpayers, explaining that they should report income when they actually receive it, not when they earn it. *See id.* at PageID.1710, PageID.1711. Mr. Kaufman contrasted this with accrual basis taxpayers, who report their income when it is earned regardless of when it is received. *See id.* at PageID.1710–11. Mr. Kaufman critiqued the Government's methodology for calculating Mr. Collins' unreported income, noting that it did not account for "what would be outstanding checks or monies that may be due to third parties, other costs, shared attorney fees, if there's anything like that." *Id.* at PageID.1726. Specifically, Mr. Kaufman explained that the money in Mr. Collins'

3

bank accounts that ultimately went to third parties would have been taxable to them, not Mr. Collins, and thus should not have been included in his taxable income. *Id.*

## B. Procedural Background

The jury convicted Mr. Collins of willfully making a false tax return with respect to his 2012 original, 2012 amended, 2015, and 2018 personal returns and his 2015 corporate return for Alpha Living. *See* ECF No. 107.

In the instant Motion for New Trial, Mr. Collins argues that Agent Williams' "methodology was fatally flawed, and resulted in a substantial overstatement of allegedly unreported income." ECF No. 129, PageID.2750. Specifically, based on the review by Mr. Collins' newly retained expert, Jeffrey T. Bagalis, a Certified Public Accountant who is also certified in Financial Forensics, Mr. Collins asserts that Agent Williams' testimony assumes the difference between legal deposits and disbursements to third parties occurring in the same year are legal fees earned. *Id.* This in turn assumes (1) there are no outstanding obligations associated with each deposit, (2) all services related to each settlement occurred in the same year, and (3) Mr. Collins received approval to recognize funds associated with each deposit in the same calendar year the deposit occurred. *Id.* at PageID.2751.

Adjusting for these assumptions, Mr. Bagalis determined that Mr. Collins' overstated his income on his 2015 and 2018 personal returns. *Id.* at PageID.2756. As a result, Mr. Collins contends that he is entitled to a new trial given that Agent

Williams' calculations were "so crucial to the prosecution's case" that he underreported his income. *Id.* at PageID.2754. He argues that this new evidence further supports the defense presented at trial—to the extent Mr. Collins' tax returns were inaccurate, it was the result of confusion, not avarice—in a way that renders a different outcome at trial "far more likely." *Id.* at PageID.2758–59. Thus, Mr. Collins asserts that "the guilty verdicts represent a miscarriage of justice because they rested on testimony that was fundamentally flawed, as in the case of a verdict based on the testimony of witnesses who were obviously incredible." ECF No. 136, PageID.2908–09 (citing *United States v. Autuori*, 212 F.3d 105, 120–21 (2d Cir. 2000)).

For the following reasons, the Court disagrees and denies Mr. Collins' Motion.

### III.   LAW & ANALYSIS

#### A. Legal Standard

Motions for new trial are governed by Federal Rule of Criminal Procedure 33. Rule 33 provides, in relevant part: "Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33. "The defendant bears the burden of proving that a new trial should be granted." *United States v. Davis*, 15 F.3d 526, 531 (6th Cir. 1994); *see also*

5

*United States v. Carson*, 560 F.3d 566, 585 (6th Cir. 2009). "The decision to grant or deny a motion for a new trial is entirely within the discretion of the district court, and [the Sixth Circuit] will not reverse absent a showing of an abuse of discretion." *United States v. Anderson*, 76 F.3d 685, 692 (6th Cir. 1996); *see also United States v. Farrad*, 895 F.3d 859, 885 (6th Cir. 2018).

### B. Discussion

As a preliminary matter, it is unclear whether the ground on which Mr. Collins brings his Motion is supported by Sixth Circuit law.

Rule 33 "'does not define "interest[ ] of justice" and the courts have had little success in trying to generalize its meaning.'" *United States v. Munoz*, 605 F.3d 359, 373 (6th Cir. 2010) (quoting *United States v. Kuzniar*, 881 F.2d 466, 470 (7th Cir. 1989)). As such, the Sixth Circuit has noted that it is

> [un]clear whether a district court may grant Rule 33 relief where the verdict is not against the substantial weight of the evidence, and where no reversible error or violation of the defendant's substantial rights has occurred, but where the district court nonetheless believes that 'the interest of justice' requires a new trial.

*Id*. The Sixth Circuit declined to decide the issue in *Munoz*, *id.* at 375, and has still not done so as far as the undersigned is aware.

In his Reply, Mr. Collins clarifies that his Motion is "not based on a claim that the verdict was 'against the manifest weight of the evidence.'" ECF No. 136,

6

PageID.2908. Nor does Mr. Collins argue that the admission of Agent Williams' testimony constituted reversible error or a violation of Mr. Collins' substantial rights. *See* ECF Nos. 129, 136. Indeed, such arguments would be unavailing as, for example, Mr. Collins does not contend that Ms. Williams was not qualified to testify as an expert or that her testimony was (1) inadmissible or (2) perjured. *See* ECF Nos. 129, 136; *cf. United States v. Farrad*, 895 F.3d 859, 885 (6th Cir. 2018) (stating standard for motion for new trial based on a claim that the government presented perjured testimony); *United States v. McKinney*, 379 F.2d 259, 261 (6th Cir. 1967) (reversing conviction because jury considered inadmissible testimony from a co-conspirator), *overruled on other grounds by Steagald v. United States*, 451 U.S. 204 (1981); *United States v. Jaffal*, No. 1:20CR155, 2022 WL 580760, at *4 (N.D. Ohio Feb. 25, 2022) (denying motion for new trial based on a claim that the trial court admitted testimony from an unqualified expert because the court found during a *Daubert* hearing that the witness was qualified as an expert regarding the topics on which he would testify).

Instead, Mr. Collins effectively requests a new trial so that he may offer a more compelling expert. However, in the related post-conviction context of ineffective assistance of counsel claims in habeas petitions, the Sixth Circuit has held that the "Constitution does not require that an indigent criminal defendant be able to retain the expert of his choosing, only that a competent expert be made

available." *Lundgren v. Mitchell*, 440 F.3d 754, 772 (6th Cir. 2006) (citing *Ake v. Oklahoma*, 470 U.S. 68, 83 (1985)). This is because "[a] licensed practitioner is generally held to be competent, unless counsel has good reason to believe to the contrary." *Id*. Thus, the Sixth Circuit has consistently found that trial counsel is not ineffective for retaining a competent expert with whom an expert retained by later counsel disagrees. *See McGuire v. Warden, Chillicothe Corr. Inst.*, 738 F.3d 741, 758 (6th Cir. 2013) ("Absent a showing that trial counsel reasonably believed that [the expert] was somehow incompetent or that additional testing should have occurred, simply introducing the contrary opinion of another mental health expert during habeas review is not sufficient to demonstrate the ineffectiveness of trial counsel." (citing *Black v. Bell*, 664 F.3d 81, 104–05 (6th Cir. 2011))); *Clark v. Mitchell*, 425 F.3d 270, 285 (6th Cir. 2005) (finding that "[i]t was not unreasonable for [defense] counsel, untrained in the field" to not hire a specialist when the experts counsel had retained did not indicate that one was necessary).

Mr. Collins was not an indigent defendant. Nor is he bringing an ineffective assistance of counsel claim. Nevertheless, the Court finds this analysis instructive in determining whether reversible error or a violation of Mr. Collins substantial rights occurred. In this case, the Court concludes that they did not. Mr. Collins does not allege that Mr. Kaufman was incompetent or otherwise unqualified to testify as his expert at trial. Indeed, Mr. Kaufman's testimony was consistent with Mr.

Bagalis' conclusion that Agent Williams' analysis substantially overstated Mr. Collins' underreported income because it failed to account for outstanding debts or obligations. *Compare* ECF No. 97, PageID.1726 (testifying that Government's methodology does not account for "what would be outstanding checks or monies that may be due to third parties, other costs, shared attorney fees, if there's anything like that") *with* ECF No. 129-1, PageID.2768 ("The assumptions relied upon by Ms. Williams result in an overstatement of unreported income because [they] fail[] to recognize proceeds (cash reserves) in the IOLTA account for the benefit of third parties (e.g., obligations to others such as medical providers, litigation expenses, or the plaintiff) or unearned funds by Defendant for the Review Years."). As such, trial counsel's retention of Mr. Kaufman, as opposed to Mr. Bagalis, was not reversible error or a violation of Mr. Collins substantial rights. Thus, Mr. Collins is not entitled to Rule 33 relief on the grounds explicitly authorized within the Sixth Circuit.

Even in Circuits that read Rule 33 more expansively, courts only grant such motions so where "the 'evidence . . . preponderate[s] heavily against the verdict, such that it would be a miscarriage of justice to let the verdict stand.'" *United States v. Witt*, 43 F.4th 1188, 1194 (11th Cir. 2022) (quoting *United States v. Martinez*, 763 F.2d 1297, 1312 (11th Cir. 1985)). In the Eleventh Circuit, this "happens only 'in the rare case in which the evidence of guilt although legally sufficient is thin and marked by uncertainties and discrepancies.'" *Id.* (internal quotation marks omitted)

(quoting *United States v. Brown*, 934 F.3d 1278, 1298 (11th Cir. 2019)). In the Second Circuit, it happens "where testimony is 'patently incredible or defies physical realities.'" *United States v. Ferguson*, 246 F.3d 129, 134 (2d Cir. 2001) (quoting *United States v. Sanchez*, 969 F.2d 1409, 1414 (2d Cir. 1992)).

Mr. Collins concedes that Ms. Williams' testimony was not so "far-fetched" so as to be "'patently incredible or def[y] physical realities.'" ECF No. 129, PageID.2754 (quoting *Ferguson*, 246 F.3d at 134). Nevertheless, he asserts, "[P]roper evaluation of the available information, which would have demonstrated that in some instances, [he] overreported his income, and, consequently, overpaid his taxes, would have changed the entire character of the case, and would likely have led to a different outcome" at trial. ECF No. 136, PageID.2906. Specifically, he contends that "the real issue at trial was that of intent, and the Bagalis report demonstrates that a correct analysis of the data would have effectively changed the factual landscape against which the jury was required to decide that issue." *Id.* at PageID.2907.

This argument is unavailing. Agent Williams testimony was not "fundamentally flawed." As Agent Williams explained while she was cross examined, she did not consider Mr. Collins' beginning or ending balances in his bank accounts because she was only concerned with his income (deposits less disbursements) in each of the target years. *See* ECF No. 96, PageID.1694. It is true,

10

as Mr. Bagalis posits, that this methodology does not account for discrepancies that arise when a settlement is deposited in a particular year but disbursements from that settlement occur in later years.  However, accounting for such discrepancies would have been more consistent with the accrual basis accounting method, and Mr. Collins specifically selected IRS review using the cash basis accounting method on his tax returns.  *See, e.g.*, Ex. 9, p. 6.

Moreover, as discussed *supra*, Mr. Kaufman testified regarding the alleged defect that Mr. Collins now seeks to expand upon through Mr. Bagalis.  *See* ECF No. 97, PageID.1726.  Indeed, during the evidentiary hearing on the instant Motion, Andrew Perun—a Certified Forensic Accountant and Certified Fraud Examiner who works with Mr. Bagalis and worked on the report—testified that he agreed with Mr. Kaufman's conclusions, although Mr. Kaufman did not conduct as detailed of an accounting as Mr. Bagalis and Mr. Perun.  ECF No. 142, PageID.2969–70.  Nevertheless, despite being presented with this critical view of the Government's analysis and provided with Mr. Collins' tax returns and account information, the jury convicted him of five counts of willfully making a false return.  This indicates that the outcome at trial would not have changed even with Mr. Bagalis more detailed analysis.  *See Sanchez*, 969 F.2d at 1413–14 ("[W]e have indicated our reluctance to approve the granting of a new trial unless we can say that the jury probably would have acquitted in the absence of the false testimony.").

11

The Court also notes that Mr. Bagalis' methodology is inconsistent. For example, during the evidentiary hearing on the instant Motion, when discussing Mr. Collins' 2015 personal return—one of the two for which Mr. Bagalis determined that Mr. Collins' overreported his income—Mr. Perun explained that Mr. Bagalis' adjustment excludes disbursements from future years if the settlement was deposited in 2015. ECF No. 142, PageID.2981–82. However, he did not do the same for any monies from 2014 and instead used the same methodology as the Government with respect to those funds. *Id.* at PageID.2983. Mr. Collins' faults the Government for not doing a complete accounting to determine all the transactions that impacted his accounts, but his experts did the same and cherry-picked the information that would be most beneficial to his argument.

As such, the Court cannot find that the evidence of Mr. Collins' guilt "is thin and marked by uncertainties and discrepancies," *Witt*, 43 F.4th at 1194 (internal quotation marks omitted) (quoting *Brown*, 934 F.3d at 1298), or that Agent Williams "testimony is 'patently incredible or defies physical realities,'" *Ferguson*, 246 F.3d at 134 (quoting *Sanchez*, 969 F.2d at 1414). Thus, his motion for new trial will be denied.

## IV.  CONCLUSION

Accordingly, for the reasons articulated above, **IT IS HEREBY ORDERED** that Defendant's Motion for New Trial (ECF No. 129) is **DENIED**.

**IT IS SO ORDERED**.

/s/ Gershwin Drain
GERSHWIN A. DRAIN
UNITED STATES DISTRICT JUDGE

Dated:  July 31, 2023

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
July 31, 2023, by electronic and/or ordinary mail.
/s/ Teresa McGovern
Case Manager